DEPARTMENT OF REVENUE, Petitioner-Appellant-
Petitioner,

v.

HORNE DIRECTORY, INC., Respondent.

Supreme Court

*No. 79–551. Argued November 2, 1981.—
Decided December 1, 1981.*

(Also reported in 312 N.W.2d 820.)

For the appellant-petitioner the cause was argued by
*Gerald S. Wilcox,* assistant attorney general, with whom
on the briefs (in court of appeals) was *Bronson C. La
Follette,* attorney general.

For the respondent there was a brief (in this court) by
*Howard A. Sweet, Robert E. Chritton* and *La Follette,*

*Sinykin, Anderson & Munson* of Madison, and oral argument by *Mr. Sweet.*

STEINMETZ, J. The issue in this case is whether a Wisconsin corporation which contracts to have telephone directories printed outside of Wisconsin and delivered directly to Wisconsin subscribers has stored, used or otherwise consumed the directories in Wisconsin. The court of appeals answered no and we affirm.

The Wisconsin Public Service Commission requires all Wisconsin telephone utilities to annually provide their subscribers with alphabetical telephone directories as part of their local telephone service. PSC sec. 165.055, Wis. Adm. Code. Instead of soliciting yellow page advertising and compiling and publishing these directories themselves, a number of telephone utilities have entered into contracts with respondent, Horne Directory, Inc. (Horne), under which Horne solicits advertising for the telephone book yellow pages and agrees to compile, publish and deliver the directories to the subscribers of the telephone companies. In payment, the revenues generated by the advertising are divided between the telephone companies and Horne.

Horne Directory, Inc., is a Wisconsin corporation. It contracts with an Illinois corporation, R.R. Donnelley and Sons Company, to print the various telephone directories. All of the directories are printed outside of the state of Wisconsin. The printer delivers most of the directories to the U.S. Postal Service, U.P.S. or common carrier outside of the state of Wisconsin for delivery directly to the telephone subscribers. The decision of the mode of shipment is made by the printer, not by Horne. Horne has no contact with or control over the directories after they have been delivered outside of Wisconsin to the U.S. Postal Service or common carrier. Aside from a small number of directories which are sent directly to

Horne, Horne never has physical possession of the directories in Wisconsin.

The Wisconsin Department of Revenue (department) made an assessment against respondent, Horne Directory, Inc., in the amount of $14,394.34, representing a claim for additional sales and use taxes, penalties and interest. The measure of the use tax was based on the charges by the printer to Horne for labor, materials, postage and transportation. A petition for a redetermination was denied. On review, the Tax Appeals Commission reversed the Department of Revenue. It found that Horne had no control over the directories in Wisconsin and held that Horne did not store, use or otherwise consume the directories in Wisconsin. We agree with that conclusion.

The circuit court affirmed the Tax Appeals Commission but used a different rationale, which we reject.

The court of appeals affirmed the circuit court decision, although it applied a different analysis and reached the same conclusion as the Tax Appeals Commission. The court of appeals held that the postal service and the common carriers, by statute, were the agents of the foreign printer and not of Horne, and that Horne, therefore, did not use the directories in Wisconsin. It also held that Horne was not subject to a sales tax because the directories were not sold to the telephone companies.

Ch. 77 of the Wisconsin Statutes, 1977, is the commonly called "Sales Tax" provision and in relevant sections to this case reads:

"77.51  **Definitions.**  Except where the context requires otherwise, the definitions given in this section govern the construction of terms in this subchapter.
    " . . .
"(4) 'Sale,' 'sale, lease or rental,' 'retail sale,' 'sale at retail,' or equivalent terms include any one or all of the following: the transfer of the ownership of, title to, possession of, or enjoyment of tangible personal property or

services for use or consumption but not for resale as tangible personal property or services . . .

" . . .

" (4r) A sale or purchase involving transfer of ownership of property shall be deemed to have been completed at the time and place when and where possession is transferred by the seller or his agent to the purchaser or his agent, except that for purposes of this subsection a common carrier or the U.S. postal service shall be deemed the agent of the seller, regardless of any f.o.b. point and regardless of the method by which freight or postage is paid.

" . . .

" (12) (a) 'Sales price' means the total amount for which tangible personal property is sold, leased or rented, valued in money, whether paid in money or otherwise, without any deduction on account of any of the following:

" . . .

"3. The cost of transportation of the property prior to its purchase;

" . . .

" (14) 'Storage' includes any keeping or retention in this state for any purpose except sales in the regular course of business or subsequent use solely outside this state of tangible personal property purchased from a retailer.

" (15) 'Use' includes the exercise of any right or power over tangible personal property incident to the ownership, possession or enjoyment of that property, . . . except that it does not include the sale or rental of that property in the regular course of business.

" . . .

" (24) With respect to the services covered by s. 77.52 (2), no part of the charge for the service may be deemed a sale or rental of tangible personal property.

" . . .

"77.52 **Imposition of retail sales tax.** (1) For the privilege of selling, leasing or renting tangible personal property, . . . at retail a tax is hereby imposed upon all retailers at the rate of 3% of the gross receipts from the sale, lease or rental of tangible personal property . . .

" . . .

"(2)(a) The tax imposed herein applies to the following types of services:
". . .
"4. The sale of telephone services of whatever nature . . .
". . .
"77.53 **Imposition of use tax.** (1) An excise tax is hereby levied and imposed on the storage, use or other consumption in this state of tangible personal property or taxable services described in s. 77.52 purchased from any retailer. . . ."

The department argues in the alternative that if a use tax is not due, a sales tax is. We reject this alternative analysis and find no taxable sale occurred in Wisconsin.

This is an action to review an administrative decision concerning the application of a tax statute. Although a reviewing court is not obligated to follow an administrative agency's interpretation of law, sec. 227.20(5), Stats.; *Dept. of Revenue v. Milwaukee Refining Corp.*, 80 Wis. 2d 44, 48, 257 N.W.2d 855 (1977); it is not to substitute its judgment for that of the agency in its findings of fact, sec. 227.20(6); *Holtz & Krause, Inc. v. DNR,* 85 Wis. 2d 198, 204, 270 N.W.2d 409 (1978). Sec. 227.20 (6) provides that a reviewing court shall set aside agency action only, "if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record." The Tax Appeals Commission's findings of fact are supported by substantial evidence in the record. There are no facts in dispute. The question is one of law, as to which no special deference is due either to the determination of the trial court or to that of the commission. *Hall Chevrolet Co., Inc. v. Dept. of Revenue,* 81 Wis. 2d 477, 483, 260 N.W.2d 706 (1978).

We agree with the court of appeals that the trial court erred in determining that the taxpayer, not the printer

was the "seller" of the directories under sec. 77.51(4r), Stats.

This case involves a use tax assessment. The use tax is being imposed on the theory that Horne was a purchaser, not a seller. The transaction being analyzed is that between Horne and the printer. In that transaction, Horne is the purchaser and the printer is the seller.

The use tax in question was imposed by the department on the theory that the directories were "purchased from a retailer," namely the printer, for use by Horne in Wisconsin within the meaning of sec. 77.53(1) and (2), Stats. (1977). However, "[A] tax cannot be imposed without clear and express language for that purpose, and where ambiguity and doubt exist, it must be resolved in favor of the person upon whom it is sought to impose the tax." *Dept. of Revenue v. Milwaukee Refining Corp., supra,* at 48–49.

Horne's position is that it did not engage in a taxable use in Wisconsin. Sec. 77.53, Stats. 1977, imposes an excise tax on "the storage, use or other consumption in this state of tangible personal property. . . ."

The word "storage" is defined in sec. 77.51(14), Stats. 1977, as including "any keeping or retention in this state. . . ."

The department concedes that the facts of this case do not demonstrate that Horne kept or retained the directories in the state of Wisconsin. However, the department urges that the ownership of the directories must have passed to Horne, at least momentarily, for Horne to transfer ownership to the telephone companies. The department argues that Horne had constructive, if not actual, possession of the directories and that such possession constituted both "storage" and "use" within the meaning of the applicable statutes.

The department relies on *L.M. Berry & Co. v. Blackmon,* 231 Ga. 659, 203 S.E.2d 520 (1974), which held

under nearly identical circumstances, that directories shipped by an out-of-state printer directly to telephone companies or their subscribers were subject to a use tax under that state's statutes and reasoned:

"The evidence in the record supports the conclusion that Berry acted as a purchaser in procuring telephone directories and that the transfers of the telephone directories were made incident to the primary object of its contracts with the telephone companies and that such transfers were not sales. The agreements between the parties, either by express provision or by implication from practice, included sale of advertising, printing of directories and shipment in Georgia to either the telephone company in bulk or to the telephone company's subscribers. Under such circumstances Berry continued to exercise a right and power over the property in this state incident to the ownership thereof so as to constitute a 'use' as defined by [the applicable statutes], thus giving rise to a use tax liability." *Id.* at 660–61.

We do not find *Berry* to be persuasive authority primarily since Georgia has no statute comparable to sec. 77.51(4r), Stats. 1977,[1] governing the timing of transfer of ownership of property for tax purposes. Under sec. 77.51(4r), ownership of the directories remained with the printer at all times prior to their physical delivery to the telephone company subscriber, the ultimate recipient in this state.

In Wisconsin, for use tax purposes, constructive possession of the directories is not given to Horne by deliv-

---

[1] Sec. 77.51(4r), Stats. 1977, provides:

"A sale or purchase involving transfer of ownership of property shall be deemed to have been completed at the time and place when and where possession is transferred by the seller or his agent to the purchaser or his agent, except that for purposes of this subsection a common carrier or the U.S. postal service shall be deemed the agent of the seller, regardless of any f.o.b. point and regardless of the method by which freight or postage is paid."

ering them to the U.S. Postal Service or common carrier. By statute, the carriers are deemed agents of the printer, not of Horne regardless of any agreement between the parties. Sec. 77.51 (4r), Stats. 1977.

Also in the *Berry* case, the Georgia court attempted to balance the sales tax applied to directories printed in Georgia by applying the use tax to directories printed outside the state but delivered into Georgia. We rejected the balancing approach in *Department of Revenue v. Moebius Printing Co.*, 89 Wis. 2d 610, 622, 279 N.W.2d 213 (1979):

"Although the use and sales taxes are complementary and supplementary, the scope of the use tax is not merely a function of the scope of the sales tax. The two are separate taxes. . . . The taxes cover different events involving the same kinds of tangible. personal property or services.

"The sales tax is imposed on the retailer for the 'privilege of selling, leasing or renting tangible personal property . . . at retail' and upon persons for the privilege of 'selling, performing or furnishing . . . services . . . at retail. . . .' Sec. 77.52(1), (2), Stats. The use tax is imposed on a person for the storage, use or other consumption in this state of tangible personal property or taxable services described in sec. 77.52, Stats., the sale of which has not been reached by the sales tax. Secs. 77.53(1), (2), 77.53(16), 77.56(1), Stats. If tangible property or a service is not stored, used or otherwise consumed in this state within the statutory meaning of those words, then no event taxable under the use tax provisions has occurred, even if the sale of that property or service in Wisconsin would be taxable under sec. 77.52, Stats."

The question is whether any event occurred within the borders of Wisconsin constituting a taxable use of the directories by Horne, considering that ownership of the directories never transferred to Horne by virtue of sec. 77.51 (4r), Stats. 1977.

It is not necessary to have physical or constructive possession of personal property to arrange for its transfer from a seller to an ultimate owner. The conclusion is erroneous that Horne "kept" or "retained" the directories in Wisconsin. Horne's actions did not constitute "storage" under sec. 77.51(14), Stats. 1977.

The statute defines "use" as including, "the exercise of any right or power over tangible personal property incident to the ownership, possession or enjoyment of that property. . . ." Sec. 77.51(15), Stats 1977.

The only "right or power" exercised over the directories in this state was exercised by the printer, who had possession and control over them at all times through its delivering agents, and by their ultimate recipients, the subscribers.

The department argues that Horne enjoyed an economic benefit by fulfilling its contracts with the telephone companies when the subscribers received the directories. The only reported Wisconsin case which faced the question of the proper definition of "enjoyment" is a circuit court decision which held that an economic benefit alone is not enough to constitute "enjoyment" within the meaning of the statute. To have the "enjoyment" of tangible personal property, one must not only derive an economic or social benefit, but must also derive some use of the property beyond achieving the end result of completing a contract and must have the benefit of applying the tangible property to its normal use. *Reynolds Transfer & Storage Co., Inc. v. Wis. Dept. of Revenue,* 2 CCH State Tax Rep., Wis. sec. 201–141 at 10,255 and sec. 201–165 at 10,306 (cir. ct. Dane Co., 1975).

The normal function of a telephone directory is to provide the names, addresses and telephone numbers of telephone subscribers. By its very nature, one can have the benefit of this function only by having the actual or constructive possession of the directories. Horne did not have actual nor constructive possession of the di-

rectories. The only benefit which inured to Horne was an economic one which flowed from the fulfillment of its contractual obligations with the telephone companies. It is the subscriber, not Horne, who has the use and enjoyment of the directories.

The first element in the statutory definition of "use" is that the taxpayer own, possess or enjoy the property in Wisconsin. Horne did not own, possess nor enjoy the directories in Wisconsin.

The second element is that the taxpayer must exercise some right or power over the tangible personal property in Wisconsin. The Tax Appeals Commission found that Horne did not have contact with nor control over the directories in Wisconsin. The circuit court held that there was momentary control in Wisconsin over the directories. We hold that finding was erroneous. The only "right or power" exercised over the directories in this state was exercised by the printer, who had possession and control over them at all times through its delivering agents, and by their ultimate recipients. The statutory requisite of an exercise of right or power over the personal property, the directories, is absent.

Even if Horne owned the directories at some point within the meaning of its contracts with the telephone companies or with the printer, this does not alter the fact that sec. 77.51(4r), Stats. 1977, and not the contracts, controls the time of transfer of ownership for sales and use tax purposes. Under that section the printer retained both ownership and possession of them at all times prior to delivery to the recipients in this state regardless of Horne's contractual obligation to deliver.[2]

---

[2] Horne acknowledges that its contracts with the printer provide that title and constructive possession transferred to Horne when the directories were delivered to the carrier at the printer's out-of-state plant. Under the terms of the contract the common carrier or the U.S. Postal Service are, therefore, deemed to be the agents of Horne.

In light of the preceding conclusions, there is also no basis for finding that Horne "otherwise consumed" the directories pursuant to sec. 77.53, Stats. 1977. Consumption requires a wearing away or using up of the property which constitutes "the final and ultimate employment of the property." *Dept. of Revenue v. Milwaukee Refining Corp., supra,* at 51. The absence of ownership, possession or control makes consumption of the directories by Horne an impossibility. The subscribers were, in fact, the ultimate consumers of the directories.

In the circumstances of this case, neither the sale of the directories which was from the printer to Horne, nor the lack of "use" of the directories by Horne allow for a tax to be imposed by Wisconsin against Horne.

*By the Court.*—The decision of the court of appeals is affirmed.

ABRAHAMSON, J., took no part.